T. Kenneth James, Ed.D. Director, Arkansas Department of Education #4 State Capitol Mall Little Rock, AR 72201-1071
Dear Dr. James:
I am writing in response to your request for my expedited response to the following questions:
 1. Does the teacher incentive bonus in Ark. Code Ann. § 6-17-811 only apply to those teachers currently teaching in a high-priority school district that is in existence at the time the teaching bonus is to be paid? For example, if a teacher taught in what would have been a high-priority school district in the 2003-2004 school year but now teaches in a non-high-priority school district in the 2004-2005 school year because of an administrative annexation or consolidation of school districts, would that teacher be eligible for the incentive bonus in Ark. Code Ann. § 6-17-811?
 2. Does the definition of eligible "teacher" pursuant to Ark. Code Ann. § 6-17-811 include pre-kindergarten teachers employed by a high-priority school district?
 3. Are those teachers entitled to an incentive bonus pursuant to Ark. Code Ann. § 6-17-811 also entitled to salary-based employment benefits (i.e., retirement, social security, etc.) based upon paid incentive bonuses?
 4. If the answer to Question 3 is "yes," may a high-priority school district paying such bonuses deduct the cost of such employment benefits from the paid incentive bonus in order to allow the school district to use the deducted portion of the bonus to pay the school district's cost of providing such employment benefits?
RESPONSE
With respect to your first question, I believe the teacher incentive bonus program set forth at A.C.A § 6-17-811 applies to any district that qualified as "high-priority" during the 2003-2004 academic year and that has not subsequently merged with another district and thereby cured the "high-priority" conditions. However, legislative clarification on this point appears warranted. I believe the answer to your second question is "yes," so long as the teacher is certified. In my opinion, the answer to your third question is "yes," and the answer to your fourth question is "no."
Question 1: Does the teacher incentive bonus in Ark. Code Ann. § 6-17-811only apply to those teachers currently teaching in a high-priority schooldistrict that is in existence at the time the teaching bonus is to bepaid? For example, if a teacher taught in what would have been ahigh-priority school district in the 2003-2004 school year but nowteaches in a non-high-priority school district in the 2004-2005 schoolyear because of an administrative annexation or consolidation of schooldistricts, would that teacher be eligible for the incentive bonus inArk. Code Ann. § 6-17-811?
In my opinion, the statute does not preclude the possibility that conditions within a district that qualified it to pay incentive bonuses based on 2003-2004 figures might change by 2004-2005 to a point where it would not have qualified if those figures had applied in the previous year. I believe in an unannexed or unconsolidated district, such changed circumstances would not preclude the district from continuing with the two-year trial incentive program. However, although the statute is unfortunately silent on the subject, I do not believe the legislature intended the incentive program to proceed in a district that has lost its initial high-priority status due to annexation or consolidation.
Section 6-17-811, enacted by Act 101 of 2003 (2nd Ex. Sess.), provides:
(a)(1) For purposes of this section:
 (A) "Teachers" means those certified personnel who spend seventy percent (70%) of their time interacting with students in a classroom setting teaching all grade-level or subject-matter appropriate classes;
 (B) "High-priority district" means a district of one thousand (1,000) or fewer students in which eighty percent (80%) or more of public school students are eligible for the free or reduced-price lunch program under the National School Lunch Act and have a three-quarter average daily membership of one thousand (1,000) or fewer for the 2003-2004 school year; and
 (C) "Previous year" means the school year immediately preceding the present school year.
 (2) The State Board of Education shall promulgate rules to determine high-priority districts of the state.
 (b) Beginning in the 2004-2005 school year, a teacher licensed by the state board who teaches in a school in a high-priority district shall receive in addition to all other salary and benefits:
 (1)(A) For new teachers a one-time signing bonus to work in any high-priority district to be paid as follows:
 (i) Four thousand dollars ($4,000) at the time a teacher not currently employed by the district signs a new contract to teach in a high-priority district; and
 (ii) Three thousand dollars ($3,000) at the beginning of each of the next two (2) subsequent years if the teacher continues teaching in the same high-priority district.
 (B)(i) If a teacher has received bonus pay under subdivision (b)(1)(A) of this section and leaves the high-priority district before the end of the three-year bonus pay period, the teacher shall pay back the amount of the bonus received in the previous year.
 (ii) If the teacher leaves the district during the school year, the teacher shall pay back the previous year's bonus and the current year's bonus; and
 (2)(A) For all teachers not newly signed to work in the district, a two thousand dollar ($2,000) retention bonus at the beginning of each of the next two (2) subsequent years if the teacher continues to work in a high-priority district.
 (B)(i) If a teacher has received bonus pay under subdivision (b)(2)(A) of this section and leaves the high-priority district before the end of the three-year bonus pay period, the teacher shall pay back the amount of the bonus received in the previous year.
 (ii) If the teacher leaves the district during the school year, the teacher shall pay back the previous year's bonus and the current year's bonus.
(c) The department shall:
 (1)(A) Monitor the implementation of the incentive program established by this section; and
 (B) Collect data to be used to evaluate the incentive program's effectiveness; and
 (2) Before September 30, 2006, submit to the House and Senate Interim Committees on Education a comprehensive evaluation of the incentive program established by this section.
 (d) By October 15, 2006, the House and Senate Interim Committees on Education shall determine whether to recommend the continuation of the incentive program.
This statute establishes a pilot program whose clear intention is to attract certified, competent teachers to small school districts serving low-income students and to both recruit new and retain existing qualified teachers. This legislation addresses a problem that the Arkansas Supreme Court has characterized as follows:
 Poor school districts with the most ill-prepared students are losing their teachers due to low pay. Both recruitment and retention of teachers are difficult in those districts.
Lake View School District No. 25 v. Huckabee, 351 Ark. 31, 61,91 S.W.3d 472 (2002). In the Special Masters' Report to the Supreme Court ofArkansas, filed on April 2, 2004 in the Lake View litigation (Case No. 01-836), the special masters summarized as follows the effect of Act 101:
 Act 101 of the Second Extraordinary Session provides signing bonuses for teachers who teach in high-priority districts — $4,000 at the time of signing a new contract, and $3,000 at the beginning of the next two years the teacher remains in the same district. Dr. James Guthrie testified on February 23, 2004, that he understood that Act 101 would be an important step in helping districts with a concentration of low-income students to have a proper teaching staff, through the use of bonuses to employ and retain them. (Tr. 88)
As Dr. Guthrie's testimony reflects, the rationale underlying Act 101 is to attract teacher to small districts that educate a high percentage of financially disadvantaged students. In my opinion, this rationale would be completely undermined if the legislation were read as applying to a previously qualifying district whose nature had changed as the result of an annexation or consolidation to the point where the newly formed district would not itself have qualified as a high-priority district.
Having offered this opinion, I must add that Act 101 is hardly a model of clarity. The legislation is problematic in at least one respect — namely, in its definition of "high-priority district" in terms of the conditions that existed during the 2003-2004 school year. Neither this definition nor any other term of the statute addresses the possibility that districts that qualified as "high-priority" during the 2003-2004 school year might be annexed or consolidated after that school year has ended, creating a resulting district that would not have qualified as a "high-priority district."
In confronting this problem, I am guided by several principles of statutory construction. First, as the Arkansas Supreme Court stated inState v. Pinell, 353 Ark. 129, 134, 114 S.W.3d 175 (2003):
 As in all statutory construction cases, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)).
Secondly, in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. Cityof Pine Bluff, 284 Ark. 551, 683 S.W.2d 923 (1985).
Given both the substance and the historical context of Act 101, I believe these principles support concluding that the legislature intended to create a pilot incentive program of relatively brief duration — it is subject to review after two school years — which would apply only to small school districts with a threshold percentage of financially disadvantaged students. As a practical matter, the legislature had to designate the 2003-2004 academic year as a benchmark in order to determine which districts might hire new teachers under the incentive program. It is consequently possible, though not likely, that changing demographics during the summer of 2004 might locate an unannexed or unconsolidated district outside the statistical range that qualified it to participate in the first place. Indeed, such a change might occur at any point during the two-year course of the program.[1] The legislature may simply have accepted this as an inevitable possibility that was nevertheless unlikely to skew the results or the value of the trial. However, it does not follow that the legislature, sub silentio, likewise intended to keep within the program an initially qualifying district that, as you suggest in your question, has essentially ceased to exist in its initial form as the result of an annexation or consolidation. Accordingly, although the matter would benefit from legislative clarification, I believe the teacher incentive bonus program set forth in A.C.A § 6-17-811 will apply to annexed or consolidated schools only if the resulting district itself would qualify as high-priority.[2]
Question 2: Does the definition of eligible "teacher" pursuant to Ark.Code Ann. § 6-17-811 include pre-kindergarten teachers employed by ahigh-priority school district?
In my opinion, the answer to this question is "yes," so long as the teachers are certified. As noted above, A.C.A § 6-17-811(a)(1)(A) defines as eligible teachers "those certified personnel who spend seventy percent (70%) of their time interacting with students in a classroom setting teaching all grade-level or subject-matter appropriate classes."[3] As reflected in Appendix B of the Arkansas Department of Education'sLicensure Induction for Public School Teachers and Administrators: AReference Handbook (August 2003), early childhood teachers — a category that covers teachers in preschool through fourth grade — are subject to a licensure requirement. It follows that these teachers would be eligible for incentive bonuses in high-priority districts.
Question 3: Are those teachers entitled to an incentive bonus pursuant toArk. Code Ann. § 6-17-811 also entitled to salary-based employmentbenefits (i.e., retirement, social security, etc.) based upon paidincentive bonuses?
I am unaware of any basis in state or federal law that would warrant treating bonus income for teachers in high-priority districts any differently than any other variety of income for purposes of determining a school district's obligation to provide salary-based employment benefits such as retirement and social security benefits.[4]
Accordingly, I believe such payments should simply be treated as "salary" under the following definition set forth at A.C.A § 24-7-202(24)(A)(i), which generally applies to the Arkansas Teacher Retirement System:
 "Salary" means the remuneration paid an employee in a position covered by the system and on which the employer withholds federal income tax.
In my opinion, then, these incentive payments should be counted in computing the employer's contribution into the System.
Question 4: If the answer to Question 3 is "yes," may a high-priorityschool district paying such bonuses deduct the cost of such employmentbenefits from the paid incentive bonus in order to allow the schooldistrict to use the deducted portion of the bonus to pay the schooldistrict's cost of providing such employment benefits?
In my opinion, the answer to this question is "no." I know of no authority that would warrant a high-priority district in making such a deduction. In offering this opinion, I am struck by the fact that the legislature has elsewhere been explicit when it intended to allow an employer credits against mandatory employer contributions. See, e.g.,
A.C.A § 6-5-307(a) ("Any increase in Educational Excellence Trust Fund funds allocated for teacher salaries may be used to fund the required salary increase provided for in this subsection, § 6-20-412, and §6-17-2101 et seq., and required social security and teacher retirement matching for certified personnel may be paid from the funds."). Nothing in A.C.A § 6-17-811 or any other provision of the Code reflects a similar legislative intention to allow employers a credit against the employer's obligation to match teacher retirement benefits on incentives for teacher recruitment and retention in high-priority districts.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The converse possibility also exists. As a result of demographic changes, a district that did not qualify as "high-priority" during the 2003-2004 school year might before the conclusion of the 2005-2006 school year devolve to a point where it would have qualified had it been in the same condition in 2003-2004. Nothing in the statute suggests that such a district would be eligible to participate in the pilot program.
[2] This conclusion appears consistent with the Arkansas Department of Education's handling of instances in which an annexation or merger results in a percentage reduction in the number of students who participate in the free and reduced-price lunch program. Subsection 6-20-2005(b)(4) of the Code, as enacted in Act 59 of 2003 (2nd Ex. Sess.), provides that the state will pay school districts varying amounts per pupil depending upon the percentage of the district's students participate in the national school lunch program. The Department of Education has taken the position that the payment per student will be reduced if an annexation or consolidation reduces the percentage of participants to a point that would warrant a lower per-pupil expenditure than would have been warranted in one of the merged districts standing alone.
[3] The phrase "teaching all grade level or subject matter appropriate classes" is not completely clear to me. I am assuming that it means that a qualifying teacher is only teaching classes in which he or she is certified.
[4] I should note that the Code contains different statutory approaches to the treatment of bonus payments with respect to retirement benefits. For instance, A.C.A § 21-5-1101(f) (Supp. 2003), which deals with lump-sum payments made to state employees under the Career Ladder Incentive Program, provides: "The lump-sum payments in this section shall not be considered as salary for the purposes of retirement eligibility." (The term "eligibility" in this passage should probably read as "benefits," since only the duration of one's employment, not the size of one's salary, bears on retirement eligibility.) Section 6-17-811 of the Code contains no such qualifications with respect to incentives for teacher recruitment and retention in high-priority districts. See also
A.C.A § 6-17-413 (likewise containing no such qualifications with respect to incentives paid to teachers certified by the National Board for Teaching Standards).